Good morning, Your Honors. Bobby Hensler from Federal Defenders of San Diego for Mr. Garcia-Renteria. As you know, there are five issues presented by this appeal. Today, I would just like to talk about two of them, the breach and the district judge's misapplication of the departure guidelines. And I would like to start with the guidelines issue. And I think before I address the specific departures that the judge applied, I should briefly respond to the government's claim that this was a variance and not a departure guidelines sentence. And I would direct the court to the record at page 56 and 57, which was the mandate hearing. At the mandate, the judge took the bench, and he said to Mr. Garcia-Renteria, here's your notice. You're going to be getting 60 months again. Defense counsel asked for further notice, asked for clarification, and asked the district judge, what's the legal basis for this sentence? The judge, although I believe misapplied those departures, clearly repeatedly stated he was applying upward departures under 5K2.0, 5K2.9, and 5K2.21. After Muhammad, does this make any difference? In other words, once he gets outside of the guideline, aren't we just reviewing for reasonableness? I don't think so. I think the Dahlman opinion that I submitted just recently that came out a couple weeks ago from this court, and I believe Your Honor heard that case. The sentence in Dahlman was within the guidelines. That's correct. But Dahlman also plainly states that the departure provisions may come into play. Right. And Dahlman is post-this Court's opinion in Cardi, post-Kimbrough, post-Gaul. My reading of Gaul doesn't, I don't believe that there's a distinction between the departures and the rest of the guidelines according to the Supreme Court. But isn't your interpretation in Dahlman inconsistent with what we said in Muhammad? Well, I think, as I started to say, I think because Dahlman is post-Gaul, Kimbrough, and Cardi, I think that's the distinction. Dahlman had the advantage. Muhammad has been overruled sub salientio? Yes, Your Honor. And even actually in Muhammad, the Court actually notes that the majority of other circuits still do apply the or interpret the departures. The thing that's kind of odd about this, of course, let's say we say, well, the judge named the wrong departure things. So we can reverse and send it back. And then the judge can say, well, I'm exercising my discretion not to sentence with any reference to the guidelines at all. I'm just going out and sentencing to something less than the statutory maximum or at the statutory maximum. Then we can only review it for reasonableness, right? And I would completely agree, Your Honor, but that's not what the district judge did in this case. Turning back to what he said at the mandate, he was clear that he was applying departures. Defense counsel asked for additional clarification and actually asked further, would it still be your intention to depart upwards one level for each prior apprehension that was noted in the PSR? And the district judge replied, certainly, and that is at page 57 of the record. So while I would agree with Your Honor that he could do that, that's not what he did. And if the government's right, if this was a variant sentence, this Court must reverse for the same reasons it did in Garcia-Renteria 1, for a lack of notice. Mr. Garcia-Renteria asked for notice, and the district court gave him notice and said that he was departing upwards 16 levels. He gave him significant notice in advance. Didn't he say he had an opportunity to respond? Right. And he did respond, and it's in the papers, responding to those departures. Okay. And so in what way was he denied notice? Well, if the judge was going to not apply a guideline sentence, was going to vary upwards, as he's entitled to do under the law, he should have just said that. Well, in effect, isn't that exactly what he said? No. He very specifically said he was departing upwards, that he was applying those specific upward departures. All right. But isn't that the point? He gave notice that that's what he was going to do. Right. So what's the problem? Where's the notice problem? Well, if the government is right that this was not an upward departure sentence, then Mr. Garcia-Renteria is entitled to notice that that's what the judge is going to do. The judge said that he was applying upward departures, that he was applying a guideline sentence. Well, how much more notice do you need, counsel? You've had two hearings after the first one. He told you exactly what he was going to do. We sent it back to give you notice. He told you at the beginning of the second time, I'm going to warn you, I'm going to give you a higher sentence than and then he poses the same sentence. How much more notice do you need? Well, the notice would have to be the correct notice, that I'm going to apply a variance, Mr. Garcia-Renteria. I'm not applying the guidelines in your case. I think your case is outside the guidelines. That's the notice that I think is required. He's given your client the maximum both times he's had him. And if we go back the third time and he tells you he's going to give him the maximum, now all of a sudden you'll do something different? Quite possibly. The response would have been different. We wouldn't have been responding to the departure guidelines. And really, it's per the rules, per this Court's opinion in Garcia-Renteria 1, the notice requirement is mandatory. And it would have been improper notice if this was not a guidelines departure. If I could move on to the specific departures that the judge applied, 5K2.0, this is a policy statement that notes that the Court can depart upwards or downwards if there's an aggravating or mitigating circumstance that's not adequately taken into consideration by the guidelines. In this case, the guidelines would adequately take into consideration the conduct that this judge clearly sought to punish, the 16 prior apprehensions that are noted in the pre-sentence report. And that's page 2-3 of the PSR. If you would turn to the alien smuggling guidelines, 2L1.1, that would specifically account for such conduct. What you would do under 2L1.1b2 is total up the number of aliens that were smuggled. In this case, it would be 41, assuming that was either proven or admitted to. And the judge would depart upwards six levels because that would be in the range of 25 to 99 total aliens smuggled. In this case, the judge could have departed up an additional two levels because the parties had already agreed to a four-level upward departure under 5K2.21, and that's noted in the plea agreement at page 133-134 of the record. But you really get back to what Judge Canby said, don't you, counsel? Because the reality is, I mean, there's been two bites at the apple already. If you go back the third time, all he has to say is, hey, you know, I'm not going to sentence with relation to the guidelines at all. I'm just going to go to the statutory maximum of the sentence. That's it. And then it's just a reasonable determination. Other than the sophistry of this kind of thing, what are we accomplishing in this? I mean, there's no substantive difference in this. You have the PSR. The PSR was clear under our rules and the Federal Rules of Criminal Procedure. If they were not disputed, those are taken as fact. So you've got a district judge that says, here's this guy who's done this again and again and again and again and again and again, and he's never been punished for it. He's a professional smuggler. The worst case I've ever seen in all the years I've been on the bench, I'm not going to stick with this, you know, the boilerplate kind of thing. I'm going to do what I'm entitled to do under the law, and I sentence this guy to the maximum. What's wrong with that under our law? Well, a couple of things. These facts weren't admitted to because Mr. Garcia-Redria actually said it. I'm not saying they were admitted to. I'm just saying he didn't dispute them. They were in the PSR. He did request an evidentiary hearing with respect to each of those, and the judge denied that request. Well, that was after he had signed it and it was all put in in the first place, right? Right. This was well down the track that he tried to contest it. That's right. Okay. So I think it comes down to notice. I think whether there's going to be a guideline sentence or a variance, a defendant, a criminal defendant, who is going to be facing time in custody, who is losing his liberty, has a right to know what the basis of that sentence is. And you don't think after two different hearings on this he's received notice? No, because he didn't receive the notice he received was that he was getting a departure guideline sentence. If I could, I would just like to briefly address the breach. The government breached the plea agreement here when it supported the sentence that was imposed at the district court. Under the plea agreement, this was not allowed. Mr. Garcia-Renteria, when he entered this plea agreement, did not reasonably expect, and that's the law in this circuit, that it allowed the government to support the 60-month sentence imposed. Under the law of plea agreements, there are special contracts. Any ambiguity is construed in favor of a defendant, Mr. Garcia-Renteria, and any lack of clarity is held against the government. Even if you believe that the plea agreement is unclear, you must read it in favor of Mr. Garcia-Renteria. When the government stood up and said that it was trying to protect the record, the record of 60 months that was imposed, the statutory maximum, that was a breach of the plea agreement. Wasn't he just trying to protect or to clarify the record? He wanted to be sure of the record? Under the plea agreement, this he was not permitted to do. And why is that? Because the plea agreement called for a recommendation of 13 months for somebody like Mr. Garcia-Renteria, who was in criminal history category 1. And did he ever say anything to the contrary, that he was not recommending that? He did not, Your Honor. But what he did try to do is support the sentence imposed and insulate the district court's 60-month sentence. Mr. Garcia-Renteria, when he signed this plea agreement, did not understand that it allowed the government to say, okay, we recommend 13 months, but then to later say, after the judge imposes a 60-month sentence, 47 months above that, try to support that sentence. If that's what the government is allowed to do under a plea agreement, I've got to tell you, I can't advise any clients to plead guilty if a government, if the government is allowed to do that under a plea agreement. Because why would he plead guilty? Why would anyone plead guilty if they can, if the government is still permitted to support the statutory maximum sentence? Well, all they did was ask whether the judge was making that finding by clear and convincing evidence. If the judge had said no and the government had said, well, we encourage you to do that by clear and convincing evidence, you might have a pretty powerful case for breach. But all he was trying to do was try to get a point of clarification, and that point could have gone in your favor. I would disagree, Your Honor. The government lawyer clearly said he was trying to protect the record, and the district judge, when he actually found that it wasn't a breach, when he made the factual finding, even said, I think he was just trying to clear up the court's order. What's the standard of review for our review of what the district court did? Is it an abuse of discretion? You know, I believe it's de novo. As I noted in the briefs, it's somewhat unsettled in the Ninth Circuit. I think de novo is a proper standard. It seems that the most panels of this Court have applied de novo review, and it seems that your sister circuits do apply de novo review. And I would submit that that's the appropriate standard of review in this case. Thank you, Your Honor. Okay. Thank you, counsel. Let's hear from the government. Thank you, Your Honors. Good morning. Chris Tenorio for the United States. May it please the Court. I just want to begin. There's a clear distortion of the record here that I need to clear up. What was said regarding the ---- from the prosecutor at this hearing was, just to clarify, is this under 3553 or the guidelines? And that's it. The comment of trying to protect ---- What do you think the answer was? What was his answer? He clearly said this was under 3553. But the comment of the prosecutor saying trying to protect the record and trying to get clear and convincing evidence, that was from the prior sentencing. That was from the prior hearing. That did not occur here. So that should not even be considered by this Court. That issue had been resolved or at least made loose. I think his position is that the question, is this under 3553, was also protective of the 60-month sentence. Well, and in that argument, it doesn't hold water either, because as the Mohamed case shows, you reviewed both of them for reasonableness anyway. The whole question was a pure question of clarification. Which one is it? And it showed to be a good question, because the district court said, yes, we must admit we're a little mixed up. And that made sense, because this was prior to the Dahl opinion, in which it clarified a little bit that it doesn't matter. Now, the case provided in the 28J letter by the defense, completely in opposite. It does not address the Mohamed standard. And I think the analysis in Mohamed is exactly right, that whether it's departure or shown as a variance, we get to a reasonableness standard. And that's what it is here. The fact that when the mandate was spread and he gave notice that it's going to be under these departures, that was in direct response to the first appeal, and this was pre-Dahl. The first appeal had to do with, well, he said it was under the departures, and we didn't have notice of that. So he came back and gave notice of the departures, and now he's saying, well, we didn't have notice of the 3553. So it's actually completely opposite of what their argument was. So the government's position, I gather, is that whatever happened at the first hearing is just behind us, because it went back for a second hearing. We're looking at that now. The notice that your opposing counsel spoke of was, in fact, given at that hearing. That's right. What has been made moot is the issue of the breach, the alleged breach in the first hearing. The only thing that should be considered in the second hearing is when the court explicitly said, I am adopting my analysis of the 3553 factors from the first hearing. Your opponent said that the mandate itself refers to the departure standards. Well, and it did. And I think it goes to notice of what the basis for the departure or variance is. Again, this was pre-Gaul. And I think it's okay, and I think what the case, the Dahlman case said, it's okay to consider reasons for the departure. It's not mandatory. It comes down to the same thing. In fact, if some of the ---- Well, even Mohammed says something like that. It does. In fact, Mohammed says if the reasons overlap, that's more basis to believe that the variance was reasonable, because it jives with what a rationale for the departures. And I think that's the only significant point we can take out of that. Here, in the latest hearing, what the court had said was it's for prior misconduct. The defense admitted in the plea agreement, in its sentencing memorandum, and at the hearing, we admit, there's prior misconduct, but we only think it should be plus four rather than plus 16. So it was a matter of degree, not a matter of whether it should happen. It did not contest the factual basis of it. It was purely an objection that it could be adopted as judicial fact-finding. Now, as Judge Beide knows, in the subsequent case of Zolt, brought the opinion adopting that, that there is no factual dispute. We can adopt it as just a legal dispute. In that case, it was exactly the same argument, that the Sixth Amendment prevents judicial fact-finding. That was disregarded because there was no factual dispute. At no time has the defense said, no, I didn't have those aliens in my car on those occasions, just that the court can't find it. But the case law does provide that it's sufficient to state whether the standard is clearly convincing. It has been found based upon the presentence report. Well, they did dispute, at least, maybe not with the PSR, but I think with respect to the plea agreement, they did dispute what they meant by certain previous offenses, did they not? No, I don't believe they did, Your Honor. And what they provided, the plea agreement provided exactly was, we agree to a plus four level departure to reflect conduct underlying a potential charge in this case as part of a plea agreement pursuant to 5K2.21, which is for prior misconduct. But it went on to say, specifically, it reflects smuggling additional aliens and for being apprehended numerous other times attempting to smuggle aliens for which he was not prosecuted. So it wasn't an exact admission for those prior alien smuggling. My notes indicate that he didn't admit each of the 16 priors. He only said that there were numerous priors. That's in the plea agreement, right? That's in the plea agreement at the hearing, excuse me, in the sentencing memorandum, however. And this is at excerpts of record page 23. 23? No, I take that as incorrect. 23, it might be in page 23, I think, of the sentencing memorandum. I think I got the wrong page. But what they do say is, we did agree to this, to the prior apprehensions. And their only objection was that, not that it was, not that it did not occur, but that the court could not adopt it. In other words, they were arguing that they needed more than just the PSR, because that was not an addition of reliability. But that is contrary, again, to Romero-Rendon and the other cases. The court clearly relied on the pre-sentence report. Now, it may have felt entitled to do that, because there had not been objections to the facts recited in the pre-sentence report. Correct. But that seems to be where he gets his facts. Well, he gets the underlying facts, but he states six times in the record during the sentencing hearing that it's based on the prior admissions of the defendant. And I believe it was both the admissions from the plea agreement and also the admissions that were reflected in the PSR. Some of the recitations of the prior apprehensions say, defendant admits this apprehension receiving money on some of the occasions. So some of those are based on his admissions. But it's that and also his recommendation to increase it for prior misconduct, which is reflected in the pleadings. So that was based on his prior admissions, and, in fact, it's recognized by the defense at the sentencing hearing when she asks for a hearing, and she says, is this departure or variance based upon the defendant's prior admissions as reflected in the PSR, and the court confirms that. The breach, there was no breach in this case. We posit the point that was made that the government was arguing that it was sent back and resolved is not what the government argued. I think as the defense board, excuse me, the appellant points out in their appeal, if the government had believed the Ninth Circuit had decided the issue, it would have argued so in its brief. It did not. It knew that the issue had not been resolved except at the district court level. The breach of the earlier hearing made moot as we were now being directed to the second hearing. At the second hearing, the question was a point of clarification. The point that was made between 3553 and departures is now moot, and it was just to figure out which direction we would go here on appeal. But, again, they're both for reasonableness. This was a reasonable sentence because the court had pointed out the extraordinary prior history of this defendant, now appellant. Extraordinary is not the requirement, nor do we know if clear and convincing is yet the requirement. All that Gall provides is that it should be, if it's a significant variance, it should have a more significant justification. That was provided here. The court noted that in its 37 years it had not seen anything similar, that it was, again, extraordinary on five points, five times he stated that, and that it was based upon his enumerated analysis of the 3553 factors. Your statement that you just look for more reason comes from Gall? No. Unfortunately, it came from the fact of having argued the case the first time and having trouble with the record. The issue was whether it was noticed, whether notice was necessary for departures or variance, and knowing that on coming up again, whether it would be that discussion. But I think that was made moot in light of Gall. Your statement that doing away with the clear and convincing and just saying, well, Oh, I'm sorry. Is from Gall, is it? Yes, that's correct, Your Honor. Because it doesn't address that, that there should be a, if there's a certain percentage of variance at a certain standard, all it says is we don't find it uncontroversial as more significant justification is required. And with that, I'll submit. Thank you. Thank you, counsel. Mr. Hensmer? I'll give you a minute. I think you were over your time, but I'll allow you a minute. Thank you, Your Honor. I appreciate that. I would just like to respond to the government's argument first that the breach that occurred at what we've called the first sentencing was moot. Garcia-Renteria 1 only addressed the notice issue. It then sent the issues, all the other issues, back to the district judge to make factual findings. And that's what he did. He, at the beginning of the second sentencing, said, I don't think there was a breach. So the breach that occurred at what we've called the first sentencing is a live issue for this court to determine because the judge, the district judge, addressed it at the second sentencing before he imposed sentence. So if that was a concern of the court, whether the breach happened before sentence was imposed, it didn't. In this case, excuse me, it didn't happen after sentence was imposed. It happened before sentence was imposed. And the law of the case doctrine, which although the government didn't refer to in their briefs, is a narrow doctrine that requires an issue to have been actually determined or by necessary implication. There is no necessary implication that the Garcia-Renteria 1 determined that issue. And I'll submit. Thank you, Your Honors. Thank you. Thank you, counsel, for the argument. The next case on the calendar is Richter v. Mutual of Omaha Insurance Company. Thank you.
judges: Bybee, Smith, Canby